## ORVILLE H. TOBEY *et al.*
### *v.*
## RUDOLPH FOREMAN.

1. CROSS-BILL—*relief sought must be equitable.* If a cross-bill seeks affirmative relief, it is indispensable that it be equitable relief, otherwise it will be subject to demurrer; for to this extent it is in the nature of an original bill, seeking further aid of the court beyond the purposes of defense to the original bill, and, under such circumstances, the relief should be such as, in point of jurisdiction, the court is competent to administer.

2. SPECIFIC PERFORMANCE—*waiver as to time.* If a purchaser of real estate, after the time for performance fixed in the contract of sale, files his bill for specific performance, the vendor may, by answer, submit to perform, and, by cross-bill, compel the purchaser also to perform; but he can not first resist the enforcement of the contract, and wait until the property has depreciated in value, and then enforce a specific performance against the purchaser, except upon such terms as the latter may be ready and willing to accept.

3. SAME—*after repudiating contract.* Where an owner of real estate repudiated a contract for its sale, on the ground he had never authorized the agent to sell or execute a contract for him, the property then having largely increased in value, and waited until it depreciated below the contract price: *Held,* that a court of equity would not decree a specific performance in his favor, although the purchaser had before sought to compel him to perform the same.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

May 9, 1872, appellee, Foreman, filed his bill in equity against appellants, Tobey and Booth, for the specific performance of an alleged contract for the conveyance of certain real estate in the city of Chicago.

The contract was dated March 15, 1872; provided for the payment of $1000 cash, and $27,000 on delivery of a deed; for the giving of a deed April 25, 1872, and the delivery of possession by May 1, 1872; made time of the essence of the contract, and was signed:    "H. D. BOOTH,    [seal]
O. H. TOBEY,    [seal]
By H. D. Booth,
R. FOREMAN.    [seal]"

June 6, 1872, Booth answered, admitting that he made the contract, and was willing to perform on his part; that he signed Tobey's name to the contract, but says he had no authority to do it.

March 20, 1873, Tobey filed his answer, denying Booth's authority, denying that the contract was made by him (Tobey), or with his knowledge or consent, or by any one having any authority from him, and setting up the Statute of Frauds.

On November 8, 1873, Foreman filed a supplemental bill, setting up that after the making of the contract the real estate in question advanced in value to $40,000; that it has since decreased in value to $25,000, and could not now be sold for more than that sum; that in consequence of the failure to carry out the contract, he had been damaged at least $8000, and praying that the defendants might be decreed to pay whatever damages he might be found to have sustained.

On November 17, 1873, defendants demurred to so much of the supplemental bill as set up the claim for damages, and answered the remainder—Tobey answering, that he was the owner of the one undivided half, that the contract in question was not binding upon him, but that he would ratify the same, and that he was ready and willing to perform. At the same time, the defendants filed their cross-bill, in which they set up the contract in question; aver that an abstract of title had been furnished, and the title accepted; that they are the owners in fee simple, each, of an undivided half of the real estate; that the contract is not binding upon Tobey, but that he is willing to ratify and perform the same; that on or about October 1, 1873, they offered to appellee to perform the contract, and to account to him for the rents and profits from May 1, 1872, he to pay interest on the purchase price of $28,-000 from that date; that he refused to perform, and praying that Foreman may be compelled specifically to perform his contract. The cross-bill also set up that Foreman had filed in the county court of Cook county a claim against the estate of Booth (who had died since bringing the suit), for damages

for failure to perform the contract in question, and praying that he might be enjoined from prosecuting the claim.

Demurrers were sustained to Foreman's supplemental bill and to the defendants' cross-bill, and Foreman dismissed his suit, and the court dismissed defendants' cross-bill, and defendants prosecute this appeal.

Messrs. GRANT & SWIFT, for the appellants.

Messrs. FULLER & SMITH, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

It is insisted that the court erred in sustaining the demurrer to the cross-bill, and dismissing the same.

Palpably, the cross-bill is wholly destitute of equity. The admitted lack of readiness and willingness on the part of appellants to perform, precludes all right to demand from appellee a specific performance of the contract.

It is supposed by appellants that it is not necessary that a cross-bill should show any ground for equitable relief, and authorities are cited as favoring that view. But wherever the cross-bill seeks relief, it is indispensable that it should be equitable relief, otherwise the bill will be demurrable; for to this extent it is not a pure cross-bill, but it is in the nature of an original bill, seeking further aid of the court, beyond the purposes of defense to the original bill. And, under such circumstances, the relief should be such as, *in point of jurisdiction, the court is competent to administer.* Story Eq. Pl. secs. 629, 398.

A cross-bill will be open to a demurrer when it seeks relief which is of an equitable nature, and does not contain all the proper allegations which confer an equitable title to such relief upon the party. Id. sec. 630.

But, it is said that the acts of appellee set up in the cross-bill amount to a waiver of the terms of the contract as to time ; that by appellee filing his bill to enforce the contract,

he thereby continued its existence, and extended the time for its performance ; that this act was a complete waiver of the limitation for appellants' performance to April 25, 1872. It is said, there is no doubt that when appellee first filed his bill, Tobey and Booth might have, by answer, submitted to perform, and by cross-bill have compelled appellee to perform. But that would have been only compelling appellee to do what he was then ready and willing and offering, by his bill, to do, to-wit: to pay the purchase money on receiving a conveyance.

By the filing of his supplemental bill, it is said that appellee again affirmed the contract was in existence, and asked for its performance by his supplemental bill; that the case then stood as if appellee had filed an original bill, setting up all of the various matters contained in his original and supplemental bills, and praying performance, with compensation. And it is asked, can there be any doubt that appellants might then, by their answers, submit to perform, and by their cross-bill compel appellee to perform ? But submit to perform how? By making the conveyance only, or by making conveyance and paying the damage sustained by appellee for not having the conveyance made at the stipulated time.

If appellants would submit to perform in the latter mode, then appellee might be compelled to perform, as in the case of filing the original bill, had appellants submitted then to perform. It would only be requiring appellee to do what he was ready and willing and offering to do by his supplemental bill: to pay the purchase money on the making of the conveyance, and payment of the damage caused by the delay in making the deed.

But, refusing to convey upon payment of the purchase money when the property was worth largely more than that amount, and waiting until the property had depreciated greatly below the purchase price, and then, for the first time, offering or being willing to convey, to then ask that appellee should

be compelled to take the property and pay the purchase price, is too ungracious a claim for equitable cognizance.

And how it has, in any way, been aided by the filing of the original and supplemental bills by appellee, we are unable to comprehend. There was no equitable reason for enjoining the prosecution before the county court of the claim for damages for breach of the contract.

We find no error in the record, and the decree is affirmed.

*Decree affirmed.*